THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

RANELLE SYKES,
    Plaintiff,     *
                                        *
    v.                           *     Civil Action No. 8:11-cv-02178-AW
                                        *
CBS RADIO, INC. OF    *
MARYLAND,                 *
    Defendant.     *
                                        *
*****************************************************************************

## Memorandum Opinion

Plaintiff Ranelle Sykes brings this action against Defendant CBS Radio, Inc. of Maryland. Plaintiff asserts employment discrimination claims under the Maryland Equal Pay Act, Md. Code Ann. Labor & Empl. §§ 3-301 through 3-308 (1995 Repl. Vol.), Prince George's County Div. 12 § 2-222 of the Prince George's County Code, and Title 20 Subtitle 12 § 1202 of the Maryland Code. Presently pending before the Court are Defendant's motion to dismiss or transfer, Doc. No. 9, Plaintiff's motion to remand, Doc. No. 12, and Defendant's motion for leave to file a surreply in opposition to Plaintiff's motion for remand, Doc. No. 19. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons that follow, the Court grants Defendant's motion to transfer, denies Plaintiff's motion to remand, and denies Defendant's motion for leave to file a surreply.

I.    BACKGROUND

In March 2001, Plaintiff Ranelle Sykes ("Sykes") began working as an on-air personality for CBS Radio, Inc. of Maryland ("CBS"). Am. Compl. ¶ 6. Plaintiff has a

Bachelor's degree in Broadcast Journalism from West Virginia University and a law degree from George Washington University. *Id.* In May 2010, Plaintiff alleges she discovered that her male co-host, who has only a high school diploma, was making "significantly more money" than Plaintiff for doing the same duties on the same show. *Id.* ¶ 7.

On May 11, 2011, Plaintiff filed suit against Defendant in the Circuit Court for Prince George's County, Maryland asserting wage discrimination claims. *See* Doc. No. 2. In her initial complaint, Plaintiff claimed $100,000 in compensatory and punitive damages under state and county law. *See* Compl. On July 6, 2011, Plaintiff filed an amended complaint which does not request a specific amount in damages but contains requests for relief including back wages, attorneys' fees, litigation costs, and liquidated damages. *See* Am. Compl.

On August 5, 2011, Defendant removed the instant action to this Court. *See* Doc. No. 1. Shortly thereafter, Defendant filed a motion to dismiss or transfer, contending that this action should be either dismissed in favor of arbitration pursuant to the arbitration provision in Plaintiff's Employment Agreement, or transferred to the U.S. District Court for the Southern District of New York so that it may compel arbitration. *See* Doc. Nos. 9-11. Plaintiff subsequently filed a motion to remand this action back to state court, contending that the Court does not have diversity jurisdiction over this matter because Plaintiff has not alleged an amount-in-controversy exceeding $75,000 and Defendant has failed to prove this threshold amount by a preponderance of the evidence. *See* Doc. No. 12.

II.   ANALYSIS

    A.   <u>Motion for Leave to File a Surreply</u>

As a preliminary matter, the Court addresses Defendant's motion for leave to file a

surreply in opposition to Plaintiff's motion for remand. In support of its motion, Defendant contends that it needs to correct two misrepresentations made by Plaintiff in her reply in support of her motion for remand. Defendant contends that, contrary to Plaintiff's assertions, Plaintiff has made statements to the press regarding the amount in controversy and that Defendant attached such a statement to its notice of removal.

Pursuant to this Court's interpretation of Local Rule 105.2(a), "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 Fed. Appx. 960 (4th Cir. 2004). In the instant action, Defendant's surreply merely brings to the Court's attention a document already incorporated as part of the record and cited to in Defendant's notice of removal as a ground for diversity jurisdiction. *See* Doc. No. 1 at 4; Ex. B. Because the Surreply was not ordered by the Court pursuant to Rule 105.2(a) and does not otherwise aid the Court in resolving Plaintiff's motion for remand, it is denied.

B.   Motion to Remand

For a case to be heard in federal court, the Court must have jurisdiction over the matter. Under diversity jurisdiction, a federal court may hear a matter as long as: (a) parties in the civil suit are citizens of different states; and (b) that the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.  The first requirement of diversity jurisdiction has already been met in the instant action because Plaintiff is a citizen of Virginia and Defendant is a citizen of both Delaware and New York, being incorporated in Delaware and having its principal place of business in New York. The second requirement is that the amount in controversy exceed $75,000.  Plaintiff contends that the Court does not have diversity jurisdiction over this matter

because Plaintiff has not alleged an amount in controversy in her amended complaint and Defendant has failed to establish that such amount exceeds the $75,000 jurisdictional minimum.

The general rule is that the amount in controversy stated in Plaintiff's complaint controls. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). If, on the complaint's face, it is obvious that the recoverable amount exceeds the jurisdictional minimum, then the matter shall stay within the federal courts. *Id* at 292. Additionally, if an amendment to a pleading reduces the requested amount, the district court shall still have jurisdiction. *Id*. The Supreme Court's reasoning for this addition to the rule relates to equity between the parties. *Id*. at 294. If the Plaintiff were able to wantonly increase or decrease the jurisdictional amount and have sole say over whether state or federal courts can hear the case, the defendant is disadvantaged. *Id*. Even if the amount requested in the complaint is less than the jurisdictional minimum, if the sum of the amount stated and the request for damages is greater than $75,000, the requirement has been met. *See JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *see also Rota v. Consolidation Coal Co.*, No. 98-1807, 1999 WL 183873 at *1 (4th Cir. Apr. 5, 1999).

If an amount is not listed in the complaint, as in the instant action, the burden falls to the defendant to establish that the jurisdictional minimum requirement has been met. *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006)). The party removing the action to federal court must establish the jurisdictional minimum by a preponderance of the evidence. *Chrin v. Ibrix, Inc.*, 203 Fed. App'x 125, 127 (3d Cir. 2008).

There are three methods available to the defendant in establishing the amount of a plaintiff's claims. First, the defendant can estimate what the damages in a complaint may be.

*McPhail*, 529 F.3d at 955.  Second, the party may look to other documents in the record.  *Id*. at 956.  Finally, a party may use a proposed settlement amount as evidence of a claim exceeding $75,000.  *See id.*; *see also Petty v. State Farm Mut. Auto. Ins. Co.*, No. 1:07cv144-D-D, 2007 WL 4468711 at *3 (N.D. Miss. Dec. 17, 2007).

If the Court uses a proposed settlement amount as a means of determining the jurisdictional minimum, that amount must reflect a reasonable estimate of the plaintiff's claims. *Cohn, D.V.M. v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997)). When attempting to establish a jurisdictional amount, the Court may only consider damages claimed at the time of removal. *Pollett v. Sears Roebuck & Co.*, No. 01-31309, 2002 WL 1939917 at *1 (5th Cir. Jul. 18, 2002). Finally, if a state statute provides for attorneys' fees, those fees are included in the amount in controversy. *Momin*, 205 F. Supp. 2d at 509.  In the instant case, the Court can employ all three methods discussed in *McPhail* to determine whether the jurisdictional minimum has been met. This is because "the amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail*, 529 F.3d at 956.

Plaintiff learned of a salary discrepancy between herself and her on-air co-host in May 2010.  In the amended complaint, Sykes prays for relief in the form of back wages, liquidated damages, reasonable attorneys' fees, and all litigation costs under the Maryland Equal Pay Act and the Prince George's County Code. In addition, Sykes seeks "any other relief the Court or a jury deems appropriate" under Counts I and II. This phrase is synonymous with punitive damages, or damages awarded in addition to actual damages upon a finding of recklessness, malice, or deceit that are meant to penalize the wrongdoer.  If this case were to go to a jury trial,

Sykes may seek punitive damages based on the language in her amended complaint. In addition to the specter of punitive damages, the request for attorneys' fees and court costs greatly increase the likelihood that Plaintiffs' claims exceed the $75,000 jurisdictional minimum.

This Court also looks at other pleadings, affidavits, and information in the record to determine if the jurisdictional requirement has been met. In Defendant's Notice of Removal, it attached a July 12, 2011 interview in which Plaintiff stated that her on-air co-host was earning "30+ thousand dollars a year more than [her]." Doc. No. 1 Ex. 1. Plaintiff's statements suggest her belief that she is entitled to $30,000 in back pay per year. The statute of limitations on Plaintiff's claim under the Maryland Equal Pay Act is three years. *See* Md. Code Ann. Labor & Empl. § 3-307(c). This translates into a claim for as much as $90,000 under the Maryland Equal Pay Act. Even assuming that Plaintiff's male co-host made only $15,000 more than her for two of the three years, this translates into a claim of $60,000 in back pay, exclusive of all other relief sought.

Additionally, Plaintiff, through her counsel, sent Defendant a settlement letter on June 24, 2011, part of which indicated that the attorneys' fees being sought in the complaint would "easily go into the six-figure plus range." Plaintiff claims that this figure reflected her intention at the time to bring additional claims under the federal Equal Pay Act and Title VII; claims which she has not in fact brought as part of this action. However, the fact remains that Plaintiff is seeking reasonable attorneys' fees under her amended complaint, and even a portion of those fees, or $15,001, could increase the amount of her claim above the jurisdictional threshold of $75,000.

In the same settlement letter, Plaintiff's counsel proposes a settlement in the amount of $219,000. Again, even if Plaintiff's amended complaint does not encompass the federal Equal Pay Act and Title VII claims contemplated in the proposed settlement, the offer of $219,000 is

persuasive evidence that Plaintiff's current claims under the Maryland Equal Pay Act and Prince George's County Code at least exceed the jurisdictional threshold of $75,000. The Court finds that Defendant has met its burden of proving by a preponderance of the evidence that Plaintiff seeks an amount exceeding the jurisdictional threshold, and Plaintiff's motion to remand is accordingly denied.

    C.    <u>Motion to Dismiss of Transfer</u>

Thus, the Court proceeds to consider whether, pursuant to the provisions of Plaintiff's Employment Agreement with Defendant, this case should be dismissed or transferred so that the dispute can be resolved through arbitration. In determining this matter, the Court looks first to the language of the employment agreement. *Towson Univ. v. Conte*, 862 A.2d 942, 946-7 (2004). If the contract's language is unambiguous, the court will give effect to its plain meaning while also considering the context in which the language appears. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (2003). The language of a contract is ambiguous if "it is subject to more than one interpretation when read by a reasonably prudent person." *Id*. at 547 (citing *Langston v. Langston*, 784 A.2d 1086, 1095 (2001)).

In the instant case, the term of the Employment Agreement is from March 14, 2008 to March 13, 2010. Plaintiff's claim arose after the expiration of the Agreement. An arbitration clause is rendered ineffective by the expiration of the agreement that contains it unless the parties agree to maintain the agreement's terms and conditions beyond the expiration. 20 Williston on Contracts § 56:6 (4th Ed. 2011). Thus, the Court must determine whether the arbitration agreement remained intact at the expiration of the contract.

In reaching this determination, the Court considers two sections of the employment

agreement: the first is §9(e), which states that, upon expiration of the agreed-upon terms, if the employee maintains employment with the employer, the terms and conditions shall continue on a day-to-day basis. Doc. No. 11 at 10. The second pertinent section, §22(a)-(b), states that any controversy or claim that arises out of the terms or conditions of the employment agreement shall be decided via final and binding arbitration, and that the arbitration "must be filed with the American Arbitration Association in the State of New York[.]" *Id.* at 20-21.

Under the law of objective interpretation of contracts followed in Maryland, the plain language of this employment agreement makes three facts clear. The first is that, by signing the agreement, Plaintiff agreed to its terms and conditions. Plaintiff argues that the agreement was unreasonably favorable to Defendant and thus unconscionable and unenforceable. However, the Court finds that Plaintiff, a licensed attorney who graduated magna cum laude from West Virginia University and obtained her law degree from George Washington University, is a sophisticated party who entered into the agreement with full knowledge and understanding of its terms. The second fact clear to the Court is that, by maintaining employment with Defendant and not requesting a new contract, Plaintiff agreed to be held to the terms and conditions of the initial employment contract on a day-to-day basis, pursuant to the terms of that initial contract. The third crucial fact is that, pursuant to her agreement to be held to those initial terms and conditions, Plaintiff agreed to settle this matter via arbitration with the American Arbitration Association in New York.

The Court upholds the terms and conditions of the executed employment agreement between the parties, and now must decide whether to stay proceedings before this Court and compel arbitration, transfer Plaintiff's claims to the U.S. District Court for the Southern District of New York to compel arbitration, or dismiss this case without prejudice so that Plaintiff may

re-file her claims in arbitration. The emerging position within the Fourth Circuit is that the Federal Arbitration Act does not permit district courts to compel arbitration in other jurisdictions. *See Indep. Receivables Corp. v. Precision Recovery Analytics, Inc.*, 754 F. Supp. 2d 782, 786 (D. Md. 2010) (transferring action to the U.S. District Court for the Western District of Texas).

Therefore, this Court must either dismiss or transfer this action. Courts within the Fourth Circuit have granted dismissal in similar cases. *See*, *e.g.*, *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, No. 5:11-cv-10-BO, 2011 WL 2433291 at *5 (E.D.N.C. Jun. 10, 2011) ("This Court cannot compel arbitration in another district. Therefore, Plaintiff's claims against [Defendant] will be dismissed without prejudice so the parties may arbitrate those claims") (citations omitted).

Section 1404(a) authorizes transfer to "any other district ... where [the case] might have been brought" for the sake of "convenience of parties and witnesses, in the interest of justice." In *Independent Receivables*, this Court elected to transfer the action to the Western District of Texas, considering: "(1) the interest in keeping the related claims and Parties involved in this case consolidated in a single action before the same court, (2) interpretation of the underlying contract is governed by Texas state law, and (3) all of the Defendants reside in Texas." 754 F. Supp. at 786. Here, the Court finds similar facts supporting a decision to transfer this action to the Southern District of New York. The Employment Agreement at issue contemplates that "[a]ny demand for arbitration must be filed with the American Arbitration Association in the State of New York", *see* Doc. No. 11 at 20, and Defendant resides in New York, its headquarters. Accordingly, the Court elects to transfer this action to the U.S. District Court for the Southern District of New York and will not compel arbitration on its own initiative.

**III.	CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion to remand, grants Defendant's motion to transfer and denies Defendant's motion for leave to file a surreply. A separate Order will follow.

  November 9, 2011  	                   /s/                         
         Date	                       Alexander Williams, Jr.
	                       United States District Judge